Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JAVIER NORIEGA COSTAS, MARIANNE SANTINI HERNÁNDEZ<br><br>**Parte recurrente**<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE GUAYNABO OFICINA DE PERMISOS URBANÍSTICOS<br><br>**Parte recurrida** | **TA2026RA00304** | **REVISIÓN ADMINISTRATIVA** Procedente el Municipio Autónomo de Guaynabo Oficina de Permisos Urbanísticos<br><br>Caso Núm.: **086-041-986-54-001 Boleto Núm. 1816**<br><br>Sobre: Reconsideración de Multa Administrativa y Orden de Paralización |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparecen Javier Noriega-Costas y Marianne Santini-Hernández, en adelante, matrimonio Noriega-Santini o parte recurrente, y nos solicita que revoquemos la multa administrativa número 1816, expedida el 12 de enero de 2026, por la Oficina de Permisos Urbanísticos (OPU) del Municipio de Guaynabo, en adelante, Municipio de Guaynabo o parte recurrida.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

**I.**

Según surge del expediente, para el mes de noviembre de 2025, la parte recurrente comenzó una remodelación en su residencia ubicada en la Calle 7, L-54, de la Urbanización Prado Alto en Guaynabo. Según se alegó, la obra consistía, entre otras cosas, en techar un pasillo de entrada y construir un techo voladizo en el patio frontal de la residencia, con el propósito de proteger dichas

áreas de la lluvia y otros elementos naturales. La propiedad es una residencia tipo *townhouse* que colinda con otra unidad medianera.[1]

El 14 de noviembre de 2025, el inspector del Municipio de Guaynabo, José A. Franceschi Cruz, en adelante, Franceschi Cruz, se personó a la residencia y dialogó con el contratista de la obra. En esa ocasión, le entregó un documento a ser entregado a la dueña de la residencia, mediante el cual se le concedía un término para solicitar una Pre-Consulta de Edificabilidad, en adelante, PCE, en la plataforma de permisos del Municipio.[2]

Conforme a lo requerido, el 21 de noviembre de 2025, la parte recurrente presentó la PCE[3] solicitada, relacionada con la cubierta del pasillo. Posteriormente, el 29 de diciembre de 2025, el matrimonio Noriega-Santini presentó una segunda PCE[4], relacionada con el voladizo o cubierta del *driveway* exterior. Aunque, reconoció que la primera solicitud fue archivada por falta de documentos y que la segunda tampoco pudo completarse satisfactoriamente, la parte recurrente sostuvo que realizó gestiones dirigidas a cumplir con el trámite solicitado. A su vez, alegó que cualquier incumplimiento obedeció a dificultades técnicas y a la complejidad de la plataforma de permisos, no a mala fe ni a intención de desacatar las instrucciones del Municipio de Guaynabo.

Así las cosas, el 29 de diciembre de 2025, Karla B. Rivera Rubio, en adelante, la querellante, presentó la Querella Núm. 2025-SRQ-307759[5] ante la OPU del Municipio de Guaynabo. En lo pertinente, la querellante planteó que los propietarios de la residencia L-54 realizaron trabajos de construcción *sin el permiso*

---

[1] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal Apelativo (SUMAC TA).
[2] *Íd.*
[3] *Íd.*, Apéndice 2. Núm. 2025-663707-PCE-303976.
[4] *Íd.* Núm. 2025-668200-PCE-304150.
[5] *Íd.*

*correspondiente*, en alegado menoscabo de la propiedad colindante y sin haber obtenido el consentimiento necesario para intervenir en áreas relacionadas con la pared medianera.[6] También alegó que, tras una visita de inspectores municipales, se les había solicitado a los propietarios de la L-54 que detuvieran la construcción mientras se evaluaba el asunto, so pena de multa.[7]

El 12 de enero de 2026, el inspector Franceschi Cruz regresó a la residencia L-54.[8] Ese mismo día, el Municipio de Guaynabo emitió una *Orden de Paralización*, en la cual se indicó que la parte recurrente construyó sin los permisos correspondientes. La *Orden* dispuso la paralización inmediata de la construcción y consignó que se expedía una multa administrativa de dos mil dólares ($2,000.00)[9] con el boleto Núm. 1816[10].

Del recurso ante nuestra consideración surge que, el 13 de enero de 2026, la parte recurrente acudió a la OPU del Municipio de Guaynabo, según requerido en la *Orden de Paralización*. Allí, según alega, se le informó que la obra necesitaba un permiso de construcción por razón del techo voladizo en el patio frontal y por haberse instalado iluminación. También, presuntamente, se le informó, por primera vez, que existía una querella presentada en su contra. La parte recurrente alega que solicitó copia de la querella, pero que no se le entregó porque "la misma era confidencial".[11]

De igual forma, el expediente refleja que, el 29 de enero de 2026, la parte recurrente acudió nuevamente a la OPU de Guaynabo con el propósito de presentar personalmente una solicitud de reconsideración de la multa. Sin embargo, según expuso, el Municipio no aceptó la presentación presencial y le indicó que debía

---

[6] Entrada 1 de SUMAC TA, Apéndice 7, págs. 2-4.
[7] *Íd.*
[8] Entrada 1 de SUMAC TA.
[9] *Íd.*, Apéndice 3.
[10] *Íd.*, Apéndice 4.
[11] Entrada 1 de SUMAC TA, pág. 6.

someterla de forma electrónica. En esa misma visita, el ingeniero municipal Jorge L. González, en adelante, Ing. González, le indicó que, por haberse realizado una construcción en una pared medianera, debía contar con el consentimiento de los vecinos de la residencia L-55 y le sugirió presentar los fundamentos legales que sustentaran su posición.[12]

El 1 de febrero de 2026, la parte recurrente presentó por correo electrónico *una Solicitud de Reconsideración de Multa Administrativa (boleto Núm. 1816) y/o solicitud de señalamiento de vista y solicitud para conocer las alegaciones en contra y poder presentar prueba y ser oído ante un examinador imparcial conforme al debido proceso de ley y a lo resuelto en Katiria's Café vs. Municipio de San Juan, 2025 TSPR 33.*[13] En dicho escrito, solicitó que se dejara sin efecto la multa o, en la alternativa, que se redujera. Además, solicitó señalamiento de vista administrativa y la oportunidad de conocer las alegaciones en su contra, presentar prueba y ser oída ante un examinador imparcial.[14]

El 4 de febrero de 2026, la parte recurrente presentó un memorando sobre medianería ante la OPU del Municipio de Guaynabo. El escrito respondió a la inquietud expresada por el Municipio sobre la ausencia de consentimiento de los vecinos colindantes y expuso la posición de la parte recurrente en cuanto al uso de la pared medianera.[15]

El 6 de febrero de 2026, la OPU del Municipio de Guaynabo acogió la solicitud de reconsideración presentada el 1 de febrero de 2026.[16] En esa comunicación, el Municipio informó que evaluaría y adjudicaría la reconsideración en sus méritos dentro del término de noventa (90) días. Además, incluyó copia de la Querella Núm. 2025-

---

[12] Entrada 1 de SUMAC TA, pág. 7.
[13] Entrada 1 de SUMAC TA, Apéndice 5.
[14] *Íd.*, pág. 3.
[15] Entrada 1 de SUMAC TA, Apéndice 6.
[16] *Íd.*, Apéndice 7.

SRQ-307759 y concedió a la parte recurrente veinte (20) días para exponer lo que estimara correspondiente.[17]

El 24 de febrero de 2026, el matrimonio Noriega-Santini presentó *Contestación a la Querella Núm. 2025-SRQ-307759*.[18] En dicho escrito, señalaron que habían sido notificados de la querella el 6 de febrero de 2026, luego de haber solicitado copia el 13 de enero de 2026 y de que se les denegara por alegada confidencialidad.

En la contestación, admitieron que durante noviembre de 2025 comenzó una remodelación en la residencia L-54, pero negaron que la obra afectara el interés propietario de la querellante. Además, alegaron que el 14 de noviembre de 2025 no se les apercibió ni ordenó detener la obra, sino que únicamente se les orientó a solicitar una PCE.[19]

En vista de que el Municipio de Guaynabo acogió, pero no resolvió la solicitud de reconsideración presentada, el 5 de junio de 2026, la parte recurrente presentó el recurso de autos y formuló los siguientes señalamientos de error:

> **Primero**: Erró el Municipio de Guaynabo al imponer una multa sin seguir el debido procedimiento de ley y sin apercibir a la recurrente de su derecho a pedir vista administrativa en contravención con lo resuelto en Katirias' Café v. Municipio de San Juan, 2025 TSPR 33. Como tal, la multa impuesta es nula y carece de validez.
>
> **Segundo**: Erró y abusó de su discreción el Municipio de Guaynabo al imponer una multa sin que la parte recurrente hubiera actuado con malicia, contumacia o ignorando las órdenes del municipio.
>
> **Tercero**: Erró y abusó de su discreción el Municipio de Guaynabo al imponer una multa exagerada, excesiva, fuera de la norma, contraria a derecho y sin criterios específicos que justifiquen su cantidad e infracción específica.
>
> **Cuarto**: Erró el Municipio de Guaynabo al imponer la multa objeto de revisión al violar sus propios actos; al no seguir sus propios procedimientos; y al actuar de forma arbitraria, caprichosa, injusta e irrazonable.

---

[17] Entrada 1 de SUMAC TA, Apéndice 7.
[18] *Íd.*, Apéndice 8.
[19] *Íd.*

El 17 de junio de 2026, el Municipio de Guaynabo presentó su *Alegato en Oposición al Recurso de Revisión y Solicitud de Desestimación.*[20]

Con el beneficio de la comparecencia de ambas partes, procedemos a expresarnos.

## II.

### A. Revisión Judicial de Multas Administrativas

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Tricoche Matos y otro v. Luis Freire*, 2025 TSPR 92, 216 DPR ___ (2025); *Vázquez et al v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances*, 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Id.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalaqcua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias

---

[20] Entrada 8 de SUMAC TA.

administrativas. *J.H.V. v. Negociado de la Policía*, 2025 TSPR 139, 216 DPR ___ (2025); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Katiria's Café, Inc. vs. Mun. San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, pág. 754; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transp. Sonell v. Jta. Subastas ACT*, supra; *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, pág. 754; *OEG v. Martínez Giraud*, supra, pág. 89.

El Artículo 1.009 de Código Municipal de Puerto Rico, según enmendado, Ley Núm. 107-2020, sec. 7014, establece el procedimiento para la revisión de toda multa administrativa. En particular, dispone que:

En el ejercicio de sus facultades para reglamentar, investigar, emitir decisiones, certificados, permisos, endosos y concesiones, **el Municipio podrá imponer y cobrar multas administrativas de hasta un máximo de cinco mil dólares ($5,000) por infracciones a sus ordenanzas**, resoluciones y reglamentos de aplicación general, conforme se establezca por ley u ordenanza.

El Municipio **deberá adoptar mediante ordenanza un procedimiento uniforme para la imposición de multas administrativas, que contenga las garantías del debido proceso de ley en su vertiente sustantiva,** similar al establecido en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

[...]
(Énfasis nuestro).

### B.   Debido Proceso de Ley

Sabido es que la Constitución de Puerto Rico reconoce una serie de derechos, incluido entre estos el debido proceso de ley. Const. ELA, Art. II, 1 LPRA sec. 7. Esta garantía tiene dos (2) vertientes, a saber, la sustantiva y *la procesal. Katiria's Café v. Mun. de San Juan,* supra. La vertiente sustantiva del debido proceso de ley busca proteger los derechos fundamentales de la persona, mientras que la vertiente procesal le impone al Estado la obligación de garantizar un proceso justo y equitativo cuando se interfiera con los intereses de libertad y de propiedad del individuo. *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. E.L.A. I,* 178 DPR 1, 35 (2010). La jurisprudencia normativa ha identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse. *Katiria's Café v. Mun. de San Juan,* supra; *Pueblo v. Pagán Rojas et al.,* 187 DPR 465, 480 (2012); *Garriga Villanueva v. Mun. San Juan,* 176 DPR 182, 197 (2009).

Sobre la *vertiente procesal,* nos dice el Tribunal Supremo que esta le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo solo ocurra mediante un proceso justo y equitativo. Esta

protección se activa cuando existe un interés individual de libertad o de propiedad. *Pueblo v. Montero Luciano*, 169 DPR 360, 371 (2006); *Rafael Rosario & Assoc. v. Dpto. Familia*, 157 DPR 306, 330 (2002). Nuestra jurisprudencia ha reiterado e innumerables veces que los requisitos para garantizar la modalidad procesal del debido proceso de ley son los siguientes: "(1) *notificación adecuada del proceso*; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord". *Rivera Rodríguez & Co. v. Lee Stowell*, etc., 133 DPR 881, 889 (1993). Véase, además, *Katiria's Café v. Mun. de San Juan*, supra; *PVH Motor v. ASG*, 209 DPR 122, 131 (2022); *Román Ortiz v. OGP*, 203 DPR 947, 954 (2020); *Fuentes Bonilla v. ELA et al.*, supra, pág. 394; *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010); *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 399 (2011).

### C. Ley para la Reforma del Proceso de Permisos de Puerto Rico

La Ley de Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, 23 LPRA sec. 9011 *et seq.*, en adelante, Ley Núm. 161-2009, rige el marco jurídico y administrativo aplicable a la solicitud, evaluación, concesión y denegación de permisos relacionados con obras de construcción y el uso de terrenos. *Díaz Vázquez v. Colón Pena*, 214 DPR 1135, 1144 (2024); *Laureano v. Mun. de Bayamón*, 197 DPR 420, 433 (2017). A esos fines, la Ley confiere a la Oficina de Gerencia de Permisos, en adelante, OGPe, y a los *Municipios Autónomos* con jerarquía la facultad de atender los trámites de permisos que les correspondan, conforme a las competencias delegadas y a la reglamentación aplicable. Art. 8.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9018.

En particular, la precitada ley define un permiso como la aprobación escrita que autoriza el comienzo de una acción, actividad o proyecto. Art. 1.5(57) de la Ley Núm. 161-2009. A su vez, dispone que el permiso de construcción comprende, entre otras actividades, la construcción, reconstrucción, remodelación, demolición u obras de urbanización. 23 LPRA sec. 9011. Por consiguiente, una obra de construcción no queda autorizada hasta que medie el permiso correspondiente expedido por la entidad competente.

Distinto al permiso de construcción, la preconsulta constituye un mecanismo de orientación previo a la radicación de una solicitud. Mediante este, la Oficina de Gerencia de Permisos o el *Municipio Autónomo* correspondiente identifica las disposiciones legales y reglamentarias aplicables al proyecto propuesto, así como la información y los permisos que el solicitante deberá presentar u obtener para poder comenzar la construcción. Art. 1.5(63) de la Ley Núm. 161-2009, 23 LPRA sec. 9011 y Art. 8.2 de la Ley Núm. 161-2009, 23 LPRA sec. 9018a. De ese modo, la presentación de una preconsulta no equivale a la expedición de un permiso ni autoriza, por sí sola, el inicio o la continuación de una obra de construcción.

El Art. 14.8(a) de la Ley Núm. 161-2009 también establece un mecanismo de fiscalización para atender querellas y posibles incumplimientos relacionados con obras realizadas sin las autorizaciones requeridas. Cuando una investigación concluya que las alegaciones de una querella son ciertas, la Junta de Planificación, el *Municipio Autónomo* o la Entidad Gubernamental Concernida, según corresponda, podrá expedir una multa administrativa y, de estimarlo procedente, instar los recursos judiciales correspondientes para obtener la paralización de una construcción o uso no autorizado, la revocación de un permiso o la demolición de las obras. 23 LPRA sec. 9024g.

Al imponer una multa administrativa, la cuantía debe regirse por los parámetros establecidos en el Reglamento Conjunto. Estos parámetros deben tomar en consideración la severidad de la violación, el tiempo durante el cual esta se extendió, la reincidencia, el beneficio económico derivado de la infracción y el riesgo o daño ocasionado a la salud o seguridad. Art. 14.8(b) de la Ley Núm. 161-2009, *supra.*

Asimismo, la referida Ley autoriza a los Municipios Autónomos con Jerarquía de la I a la V, o a sus representantes autorizados, a utilizar sus funcionarios, empleados o fuerzas policíacas para expedir boletos de multas administrativas. Art. 14.10(a) de la Ley Núm. 161-2009, 23 LPRA sec. 9024i. El boleto deberá identificar claramente la falta administrativa alegada, la disposición infringida, la fecha de su expedición y el monto de la multa. Art. 14.10(b), *supra.* Además, copia del boleto puede entregarse personalmente, por correo certificado o mediante notificación electrónica a la persona a cargo de la propiedad, e incluirá las instrucciones para solicitar reconsideración y revisión. Art. 14.10(c), *supra.*

Por último, la parte adversamente afectada por una multa administrativa expedida por un Municipio Autónomo con Jerarquía de la I a la V podrá solicitar reconsideración o revisión conforme al procedimiento administrativo aplicable. Art. 14.10(f) de la Ley Núm. 161-2009, supra.

### D. Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios

El *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Conjunto Núm. 9473 de 2023, en adelante, Reglamento Conjunto, complementa las disposiciones de la Ley Núm. 161-2009 relativas a la imposición de multas administrativas.

En particular, la Sección 11.4.1.2 dispone que las multas administrativas deberán imponerse conforme a los parámetros establecidos en la Ley Núm. 161-2009, el propio Reglamento y las Normas para el Avalúo de Multas Administrativas adoptadas por la Junta de Planificación.

A esos fines, la cuantía de la multa no depende únicamente de la identificación de una infracción. La reglamentación exige considerar la severidad de la violación, el término durante el cual esta se extendió, la reincidencia, el beneficio económico derivado de su comisión y el riesgo o daño ocasionado a la salud o seguridad. Sección 11.4.1.2(a) del Reglamento Conjunto Núm. 9473, supra., pág.757. Tales factores permiten que la sanción responda a las circunstancias particulares de cada caso y a la naturaleza de la conducta imputada.

En cuanto al cálculo de la multa, el Reglamento Conjunto establece una cantidad base mínima de quinientos dólares ($500.00) o el doble del costo del permiso o de la falta alegada, lo que resulte mayor. Cuando se alegue ausencia de permiso, se utilizará como base la suma mínima de quinientos dólares ($500.00). Para estos propósitos, el costo del permiso será aquel que la parte querellada habría tenido que pagar de haber realizado el trámite ordinario correspondiente. Sección 11.4.1.2(b), *supra.*

Además, el Reglamento Conjunto asigna multiplicadores según la severidad de la falta administrativa. En lo pertinente, la ausencia de permiso y el permiso vencido conllevan un multiplicador de dos (2) veces la base de la multa. Por su parte, el incumplimiento con las condiciones de un permiso, la presentación de información falsa y la operación de un uso distinto al autorizado u otorgado conllevan los multiplicadores específicos establecidos en la reglamentación. El incumplimiento de órdenes de la Junta de Planificación está sujeto a un multiplicador de tres (3) veces la base

de la multa. Sección 11.4.1.2(c), *supra*. De este modo, la reglamentación provee una metodología objetiva para fijar la cuantía de la sanción administrativa.

## III.

En el caso que nos ocupa, corresponde examinar si, a la luz del expediente administrativo y de las disposiciones legales y reglamentarias aplicables, el Municipio de Guaynabo actuó correctamente al expedir la *Orden de Paralización* y la multa administrativa impugnada. Para ello, resulta indispensable considerar el curso de los trámites iniciados por la parte recurrente, la naturaleza de las obras inspeccionadas y las determinaciones emitidas por la OPGe.

Ciertamente, en *Katiria's Café v. Municipio Autónomo de San Juan*, supra, el Tribunal Supremo reiteró que una multa administrativa no puede convertirse en final sin que la parte afectada cuente con una oportunidad real de comparecer ante un juzgador imparcial, presentar su posición y confrontar la evidencia en su contra. No obstante, dicho precedente no releva a este Tribunal de evaluar las circunstancias particulares de cada caso ni exige que todo proceso de multa administrativa sea idéntico. Lo determinante es que el procedimiento, considerado en su totalidad, haya provisto una notificación adecuada y una oportunidad efectiva para cuestionar la sanción.

Conforme surge del expediente, tras la inspección inicial realizada en noviembre del año 2025, el Municipio de Guaynabo orientó a la parte recurrente a presentar una preconsulta de edificabilidad para evaluar las obras propuestas. Sin embargo, dicho trámite tenía el propósito de determinar si los trabajos cualificaban como obras exentas o si, por el contrario, requerían una autorización ulterior. Por ello, la sola presentación de una preconsulta no constituía una aprobación de la obra ni autorizaba

su continuación mientras el trámite permanecía pendiente de evaluación.

Posteriormente, durante la inspección del 12 de enero de 2026, el Municipio de Guaynabo constató que los trabajos incluían la instalación de un techo voladizo con elementos estructurales, tales como vigas de acero, cables, tensores y anclajes mecánicos. A base de ello, concluyó que la obra no cualificaba como exenta y que requería la obtención previa del permiso de construcción correspondiente. Con este trasfondo, atendemos los señalamientos de error planteados.

En su *primer señalamiento de error*, la parte recurrente plantea que el Municipio erró al imponer la multa sin seguir el debido procedimiento de ley y sin apercibirle de su derecho a solicitar una vista administrativa. Sostiene que esa alegada deficiencia torna nula la multa impugnada. *No le asiste la razón.*

En cuanto al apercibimiento sobre la vista administrativa, el presente caso se distingue de *Katiria's Café v. Municipio Autónomo de San Juan*, supra. Allí, el Municipio de San Juan no notificó a la parte adversamente afectada que podía solicitar la celebración de una vista administrativa dentro del término provisto para cuestionar la multa. En cambio, el Boleto Núm. 1816 notificó expresamente que la persona afectada podía presentar un recurso de reconsideración dentro de veinte (20) días. Además, especificó que "[e]l director de OPU o funcionario en quien se delegue esta facultad, deberá decidir dentro de los próximos veinte (20) días a la radicación de la reconsideración si modifica la multa, la deja sin efecto o si señala la celebración de una vista administrativa."[21]

Queda claro que, el boleto informó de manera específica el mecanismo disponible para cuestionar la multa y para procurar la

---

[21] Entrada 1 de SUMAC TA, Apéndice 4.

celebración de una vista. Además, el Municipio acogió la reconsideración, notificó copia de la querella y le concedió un término para expresarse, el cual la parte recurrente utilizó al presentar su contestación a la querella. Así, el Municipio de Guaynabo cumplió con el deber de notificación que *Katiria's Café*, supra, reconoce como indispensable para que la parte afectada pueda ejercer efectivamente su derecho a ser oída. Por tanto, no puede sostenerse que la parte recurrente desconocía la existencia de ese remedio ni que el Municipio de Guaynabo omitió apercibirle sobre su derecho a solicitarlo. En ese contexto, no se configuró una violación al debido proceso que justifique declarar nula la multa administrativa.

Por estar estrechamente relacionados, examinaremos de forma conjunta el *segundo, tercero y cuarto señalamiento de error*. Mediante estos, la parte recurrente cuestiona la procedencia de la multa administrativa por entender que no actuó con malicia, contumacia o intención de desacatar las instrucciones municipales; que la cuantía de $2,000.00 es excesiva y carece de fundamento; y que el Municipio de Guaynabo actuó de forma arbitraria, caprichosa e incompatible con sus propios procedimientos. *No le asiste la razón.*

En el presente caso, la imposición de la multa no descansó exclusivamente en las alegaciones de la parte querellante ni en la mera existencia de una controversia relacionada con la pared medianera. Según se desprende del expediente, luego de la intervención municipal en noviembre de año 2025, la parte recurrente presentó una primera preconsulta, pero esta fue archivada por falta de subsanación. Posteriormente, presentó una segunda preconsulta relacionada con el voladizo frontal.

Asimismo, surge de la inspección posterior, efectuada el 12 de enero de 2026, que el Municipio de Guaynabo determinó que los trabajos constituían una obra de carácter estructural que no

cualificaba como exenta y que requería obtener previamente un permiso de construcción. La documentación presentada por la propia parte recurrente en la segunda preconsulta es consistente con esa conclusión. En ella se describió un techo en voladizo de alta resistencia, compuesto por vigas, travesaños, cables de acero, tensores, anclajes químicos y elementos de fijación, entre otros.

Por tanto, aunque la parte recurrente sostiene que actuó de buena fe y que confrontó dificultades técnicas al utilizar la plataforma electrónica, esas circunstancias no relevaban a la parte recurrente de obtener la autorización requerida antes de ejecutar una obra que, conforme a las características observadas y a la documentación sometida, requería evaluación y autorización administrativa. La imposición de una multa por ausencia de permiso no exige acreditar malicia, contumacia o una intención deliberada de incumplir. Bastaba con que el Municipio de Guaynabo constatara que la obra realizada requería un permiso de construcción y que, al momento de la inspección, dicho permiso no había sido expedido.

Tampoco procede concluir que la multa de $2,000.00 fuera exagerada, contraria a derecho o impuesta sin consideración de los criterios reglamentarios. El Reglamento Conjunto dispone que, al fijar una multa administrativa, deben considerarse la severidad de la violación, el término durante el cual se extendió, la reincidencia, el beneficio económico derivado de la conducta y el riesgo o daño ocasionado a la salud, seguridad o propiedad. Asimismo, contempla que la cuantía de la sanción puede responder a la clasificación de la falta administrativa y a la existencia de circunstancias agravantes.

En este caso, la sanción fue emitida luego de una investigación, una inspección ocular y la evaluación de los trámites asociados a la propiedad. El Municipio de Guaynabo concluyó que se ejecutaba una obra estructural sin contar con el permiso de construcción requerido. Ante esas circunstancias, la parte

recurrente no demostró que la multa excediera los límites legales o reglamentarios aplicables ni que el Municipio hubiese prescindido de los parámetros que rigen el avalúo de multas administrativas. El mero desacuerdo con la cuantía impuesta no basta para desplazar la presunción de corrección que cobija la determinación administrativa.

Finalmente, tampoco se acreditó que el Municipio de Guaynabo hubiese actuado de manera arbitraria, caprichosa o contraria a sus propios procedimientos. Por el contrario, el expediente refleja que el Municipio de Guaynabo orientó inicialmente a la parte recurrente sobre la presentación de una preconsulta, evaluó los trámites sometidos, inspeccionó nuevamente la propiedad al advertir la presencia de elementos estructurales, emitió la orden de paralización y la multa administrativa, luego de constatar que la obra continuaba sin el permiso correspondiente. Además, acogió la solicitud de reconsideración presentada por la parte recurrente y le notificó copia de la querella para que pudiera expresarse en torno a sus alegaciones. Si bien, la parte recurrente discrepa de la apreciación municipal sobre la necesidad del permiso y la cuantía de la multa, esa discrepancia no convierte la actuación administrativa en arbitraria.

En consecuencia, la totalidad del expediente demuestra que el Municipio actuó dentro de la autoridad que le reconoce la Ley Núm. 161-2009 y el Reglamento Conjunto. La parte recurrente no logró derrotar la presunción de corrección que cobija la determinación administrativa ni demostrar que la multa se impuso sin procedimiento, sin base fáctica o de manera irrazonable. Por consiguiente, resolvemos que los errores señalados *no se cometieron.*

## IV.

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos está conforme y añade lo siguiente. Contrario a lo planteado por la parte recurrida, este Tribunal tiene jurisdicción para atender el recurso de referencia. Ello porque fue defectuosa la notificación del Municipio en torno al término de 90 días que tendría para actuar sobre la reconsideración presentada. Adviértase que dicha notificación es ambigua en cuanto al punto de partida del término de 90 días, por lo cual no apercibió adecuadamente a los recurrentes sobre el hecho de que, jurídicamente, el término ya había comenzado a transcurrir con la presentación de la reconsideración. Aunque la notificación fue defectuosa, por lo cual el término formal de revisión judicial no comenzó a transcurrir, al no haber mediado incuria de parte de los recurrentes, este Tribunal tiene jurisdicción sobre los méritos del recurso. Véanse, por ejemplo, *PR Eco Park v. Mun. de Yauco*, 202 DPR 525 (2019); *Maldonado v. Junta Planificación*, 171 DPR 46, 57–58 (2007); *Colón Torres v. AAA*, 143 DPR 119, 124-126 (1997); *IM Winner, Inc. v. Junta de Subastas*, 151 DPR 30, 38-40 (2000); *Bomberos Unidos v. Cuerpo Bomberos et al.*, 180 DPR 723, 770-772 (2011); *Molini Gronau v. Corp. Dif. Púb.*, 179 DPR 674, 688-89 (2010) ; *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 69-70 (2009); *García v. Adm. del Derecho al Trabajo*, 108 DPR 53, 56-57 (1978); *Pérez, Pellot v. J.A.S.A.P.*, 139 DPR 588 (1995); *Rivera v. Depto. de Servicios Sociales*, 132 DPR 240 (1992). En cuanto a los méritos del recurso, y contrario a lo planteado por los recurrentes, no puedo concluir que constituya un error perjudicial la

determinación del Municipio de no celebrar una vista administrativa a raíz de la solicitud de reconsideración. Ello porque del récord surge, de forma incontrovertida, que los recurrentes han aceptado que debían solicitar permiso para el proyecto en controversia y, además, que el proyecto no se detuvo aun luego de que el Municipio les informara al respecto. Por tanto, al no haber hecho materiales en controversia, no era necesaria la celebración de una vista evidenciaria.

El Juez Pérez Ocasio emite un voto particular.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JAVIER NORIEGA COSTAS, MARIANNE SANTINI HERNÁNDEZ<br><br>**Parte recurrente**<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE GUAYNABO OFICINA DE PERMISOS URBANÍSTICOS<br><br>**Parte recurrida** | **TA2026RA00304** | **REVISIÓN ADMINISTRATIVA** Procedente el Municipio Autónomo de Guaynabo Oficina de Permisos Urbanísticos<br><br>Caso Núm.: **086-041-986-54-001**<br>**Boleto Núm. 1816**<br><br>Sobre: Reconsideración de Multa Administrativa y Orden de Paralización |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pérez Ocasio y la juez Trigo Ferraiuoli

## VOTO PARTICULAR DEL JUEZ PÉREZ OCASIO

Sostengo que este Foro Apelativo *carece de jurisdicción* para atender el recurso de autos. La parte recurrente presentó su solicitud de reconsideración el 1 de febrero de 2026, por lo que el término de noventa (90) días para adjudicarla comenzó a transcurrir desde esa fecha. Vencido dicho término sin que mediara una determinación final o una prórroga oportuna, comenzó a cursar el término jurisdiccional de treinta (30) días para solicitar revisión judicial. Sección 3.15 de la LPAUG, supra, sec. 9655. Debido a que el recurso de autos se presentó el 5 de junio de 2026, *fuera de ese término*, procede su **desestimación**. *Mun. Río Grande v. Adquisición Finca*, 2025 TSPR 36, 215 DPR ___ (2025); *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *Mun. Aguada v. W. Const. y Recovery Finance*, 214 DPR 432, 448 (2024).

No obstante, de existir jurisdicción para atender los méritos del recurso, como así lo entienden los compañeros del Panel,



concluiría que los señalamientos de error no se cometieron, por las razones expuestas en el análisis precedente. El expediente refleja que el Municipio notificó a la parte recurrente de los mecanismos disponibles para impugnar la multa, evaluó los trámites relacionados con la obra y determinó, luego de la inspección correspondiente, que esta requería un permiso de construcción. Asimismo, la parte recurrente no demostró que la multa fuera contraria a los parámetros legales y reglamentarios aplicables ni que la actuación municipal fuera arbitraria, caprichosa o irrazonable.

En San Juan, Puerto Rico, a 30 de junio de 2026.

Alberto Luis Pérez Ocasio
Juez del Tribunal de Apelaciones